BUCHALTER
A Professional Corporation
Daniel C. Silva (SBN: 264632)
Kalley R. Aman (SBN 217337)
David S. Wilson (SBN: 348043)
655 West Broadway, Suite 1600
San Diego, CA 92101-8494
Telephone: 619.219.5335
Email: dsilva@buchalter.com
kaman@buchalter.com
dwilson@buchalter.com

*Attorneys for Defendant*
*Nations Direct Mortgage, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

*ex rel.* RELATOR LLC, a California limited liability company,

Relator,

vs.

NATIONS DIRECT MORTGAGE, LLC, a California Limited Liability Company; and DOES 1-10,

Defendants.

CASE NO. 2:22-cv-04784-SPG-MAA

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

DATE: December 10, 2025
TIME: 1:30 p.m.
COURTROOM: 5C

Complaint Filed: July 13, 2022
Judge: Sherilyn Peace Garnett

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 10, 2025, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Sherilyn Peace Garnett, located in the United States Courthouse, 350 W. First Street, Courtroom 5C, Los Angeles, California 90012, Defendant Nations Direct Mortgage, LLC ("Defendant") will and hereby does move this Court to dismiss the Complaint filed by Plaintiff/Relator Relator LLC, naming Plaintiff United States of America as the real party in interest, which has declined to intervene. This motion is made on the grounds that Relator LLC's suit is precluded by the public disclosure bar and fails to satisfy federal pleadings standards.

This motion is based on this Notice of Motion, the attached memorandum of points and authorities, the Declaration of David Wilson, and the Request for Judicial Notice, all which are filed concurrently, and all of the pleadings, files, records, and argument in this proceeding.

Pursuant to Local Rule 7-3, this motion is made following the meet and confer discussion between counsel which took place via telephone on September 26, 2025. *See* Declaration of David Wilson ¶ 2.

DATED: October 6, 2025

Respectfully submitted,

BUCHALTER
A Professional Corporation

By: */s/ Daniel C. Silva*
Daniel C. Silva
Kalley R. Aman
David S. Wilson
*Attorneys for Defendant Nations Direct Mortgage, LLC*

.

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

A. NDM, A Regional Lender, Suffers to Stay Afloat During the Early Days of the Pandemic ........ 2

B. Relator, LLC Is Formed For One Purpose: Filing *Qui Tam* Actions ........ 2

C. As an Outsider, Relator Sources Its Allegations from Public Sources ........ 3

III. LEGAL STANDARD ........ 5

IV. ARGUMENT ........ 6

A. The Public Disclosure Bars the Complaint's Lone Cause of Action ........ 7

2. Relator Is Not the Original Source of the Public Information ........ 11

B. Relator Fails to Plead Facts Demonstrating NDM's Knowledge ........ 13

V. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5

*United States ex rel. Biddle v. Board of Trustees of the Leland Stanford, Jr. Univ.*,
161 F.3d 533 (9th Cir. 1998), *cert denied*, 526 U.S. 1066 (1999) .......... 8

*United States ex rel. Calva v. Impac Secured Assets Corp.*,
2018 WL 6016152 (C.D. Cal. June 12, 2018) .......... 8, 9

*Campbell v. Redding Medical Center*,
421 F.3d 817 (9th Cir. 2005) .......... 8

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) .......... 6

*Durkin v. Cnty. of San Diego*,
300 F. Supp. 3d 1107 (S.D. Cal. 2018) .......... 13

*United States ex rel. Found. Aiding the Elderly v. Horizon West*,
265 F.3d 1011 (9th Cir. 2001) .......... 9

*Graham County Soil and Water Conservation Dist. v. U.S. ex rel. Wilson*,
559 U.S. 280 (2010) .......... 7

*U.S. ex rel. Hendow v. Univ. of Phoenix*,
461 F.3d 1166 (9th Cir. 2006) .......... 13

*United States ex rel. Hochman v. Nackman*,
145 F.3d 1069 (9th Cir. 1998) .......... 15

*United States ex rel. Hong v. Newport Sensors, Inc.*,
No. SACV 13-1164-JLS-JORx, 2016 WL 8929246 (C.D. Cal. May 19, 2016) .......... 10

*U.S. ex rel. Mateski v. Raytheon Co.*,
816 F.3d 565 (9th Cir. 2016) .......... 7, 9

*Moore v. Kayport Package Express, Inc.*,
885 F.2d 531 (9th Cir. 1989) .......... 6

*United States ex rel. Relator LLC v. Kellog*,
No. 23-cv-118-CAB-BLM, 2025 WL 897439 (S.D. Cal. Mar. 24, 2025) .......... 11

*United States ex rel. Relator LLC v. Koostra*,
No. 1:22-CV-000924-TLN-CDB, 2024 WL 3666470 (E.D. Cal. Aug. 6, 2024) .......... 10, 11

*United States ex rel. Relator LLC v. Steven Sunshine et al.*,
No. 8:23- CV-00134-JVS-ADS (C.D. Cal. June 30, 2025) .......... 11

*U.S. ex rel. Rosner v. WB/Stellar IP Owner, LLC*,
739 F.Supp.2d 396 (S.D.N.Y. 2010) .......... 9

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
563 U.S. 401 (2011) .......... 9

*Shaw v. Hahn*,
56 F.3d 1128 (9th Cir. 1995) .......... 6

*Shwarz v. United States*,
234 F.3d 428 (9th Cir. 2000) .......... 6

*Silbersher v. Valeant Pharms. Int'l, Inc.*,
89 F.4th 1154 (9th Cir. 2024) .......... 8

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .......... 6

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 6

*United States ex rel. Winter v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*,
953 F.3d 1108 (9th Cir. 2020) .......... 13

**Federal Statutes**

31 U.S.C.
§ 3729(b)(1) ........ 13
§ 3730(e)(4)(A) ........ 7
§ 3730(e)(4)(A)(ii)-(iii) ........ 8, 11
§ 3730(e)(4)(B) ........ 8
§ 3730(e)(B) ........ 12

**Other Authorities**

Fed.R.Civ.P. 9(b) ........ 1, 6, 13, 14, 15

Fed.R.Civ.P. 12(b)(6) ........ 1, 5

https://data.sba.gov/dataset/ppp-foia ........ 9, 10

# I. INTRODUCTION

The relator in this matter, tellingly named Relator LLC, combed through publicly reported information, and then repeated that information back to the federal government. For this minimal and dismissible effort, it expects a reward, even after the government declined to pursue any legal action against Defendant Nations Direct Mortgage, LLC ("NDM"). Abusing this public information is a common practice by Relator LLC—a serial *qui tam* relato. It has filed dozens of COVID-19 relief fraud *qui tam* actions in this District alone. Many more plague other District Courts. This plagiarism is a bar to any recovery under the False Claims Act ("FCA"); fully warranting dismissal under Fed.R.Civ.P. 12(b)(6) for this and other deficiencies.

Relator LLC evidently drew its facts from the same principal sources: the federal government's accountability website PandemicOversight.gov, and ProPublica.org. The FCA's public disclosure bar specifically prohibits such claims. Other courts have consistently dismissed Relator LLC's other *qui tam* suits for this very reason. The FCA rewards whistleblowers. In seeking to take advantage of the FCA's potential rewards, Relator LLC cut-and-pasted from public websites, seeking a windfall without any of the risks typically borne by whistleblowers.

Relator LLC's bare allegations fall short of Fed.R.Civ.P. 9(b)'s heightened pleading standard for fraud. There is no allegation of fact that NDM knew it was excluded from the PPP loan scheme. In turn, the complaint fails to allege that NDM made an intentionally false statement. As an outsider, the complaint establishes that there is simply no whistle for Relator LLC to blow under the FCA.

These shortcomings are not surprising, considering Relator LLC is not the "original source" of any information. Its complaint fails to convert publicly-reported information into a sufficient FCA cause of action. Its bland, conclusory statements do not overcome the public disclosure bar. As a non-original source of any information, Relator LLC will not be able to cure its pleading deficiencies. Its complaint fails to state a claim, and must accordingly be dismissed with prejudice.

## II. FACTUAL BACKGROUND

### A. NDM, A Regional Lender, Suffers to Stay Afloat During the Early Days of the Pandemic

Founded in 2007, defendant NDM is a regional residential mortgage lender. While many companies in the lending business are mega-corporations, with ticker symbols and scores of in-house lawyers, NDM is different. It has approximately 168 employees and a business footprint significantly smaller than its competitors.

In early 2020, the COVID-19 pandemic injected uncertainty into every area of American life. The rapid onset of the pandemic and the associated response by local, state, and federal governments forced businesses to shut down, curtail, or alter their operations. NDM, hoping to avoid mass layoffs of its staff, sought a payroll loan from Texas Capital Bank. Complaint, ¶ 22. The loan was approved on April 27, 2020. *Id.* While the loan was issued by Texas Capital Bank, the U.S. Small Business Administration ("SBA") guaranteed payroll loans such as these in order to incentivize lenders to provide capital and keep the U.S. economy afloat. These payroll loans were termed Paycheck Protection Program ("PPP") loans.

### B. Relator, LLC Is Formed for One Purpose: Filing *Qui Tam* Actions

The nominal relator in this matter—unimaginatively named Relator, LLC ("Relator")—is a company that was created solely to act as if it were a whistleblower and to file FCA *qui tam* actions. This is its business model; its sole source of income. Formed in May 2022 with the intent to file complaints just like in this matter, Relator is a serial filer of meritless FCA *qui tam* actions. *See* Declaration of David Wilson ("Wilson Decl."), Exs. A & D; Request for Judicial Notice ("RJN") 5-6. In the Central District of California alone, Relator has initiated at least[1] 29 FCA *qui tam* actions. Wilson Decl. Ex. D; RJN 5-6. In all of these actions, Relator effectively alleges the same type of misconduct: COVID-19 relief fraud. *Id.* But Relator does

[1] The total number of lawsuits initialed by Relator in this District is not certain, given that the suits are initially sealed for an indeterminate amount of time.

not have direct knowledge to support the allegations, at the very least, in this matter.

Knowing this, it is no coincidence that Relator was established in early 2022 with a business plan of filing FCA *qui tam* actions alleging COVID-19 relief fraud. In an around 2021, the U.S. government and news media began publishing information about individuals and entities who obtained PPP loans. *See* RJN 6-7. With this information freely accessible, Relator was founded, and immediately began executing its business plan of farming and repackaging publicly-available data into lawsuits, including the present matter.

**C. <u>As an Outsider, Relator Sources Its Allegations from Public Sources</u>**

While amassing twenty-three pages, Relator's Complaint (Dkt. 1) is conspicuously lean on factual allegations against NDM. Relator contends that NDM was ineligible to receive a PPP loan based on just three limited facts: (1) NDM received a PPP loan from Texas Capital Bank in April 2020; (2) its PPP loan application included a "NAICS" code indicating that NDM is a financial lender; and (3) the SBA eventually clarified (on January 6, 2021, nine months after NDM applied for its PPP loan) that certain financial lenders were ineligible to obtain PPP loans. Compl. ¶¶ 1, 3, 43. But these facts come not from Relator's independent, insider knowledge. It is nothing more than a perfunctory review of publicly-available data, with hollow allegations like:

- "Defendants [sic] have applied for and received total loan forgiveness despite the prohibition on the [sic] receiving the loan."
- "Defendants made many material false statements to the government to obtain the loan."
- Defendants [sic] made many material false statements to the government to obtain total forgiveness for the loan."
- Defendant used the loan for unauthorized purposes."

Compl. ¶¶ 8-11. There is also no analysis of the specific exclusion that Relator alleges was the basis for its ineligibility for a PPP loan. That's because NDM was eligible

for the PPP loan and forgiveness. All the Complaint can muster for an allegation is that "NDM is a money lender." Compl., ¶ 45. Yet, the list of "Ineligible Businesses" that Relator references (*id*. ¶ 44) does not ban "money lenders."

And yet, this same list of "Ineligible Businesses" expressly identified the following type of business as "eligible" for a PPP loan: "Mortgage companies primarily engaged in the business of servicing loans are eligible." *Id*. Thus, the SBA rules and regulations surrounding PPP loans, which is the sole basis of the entire litigation, undermine Relator's Complaint.

PPP loans and loan information can be found on government-operated websites—e.g., PandemicOversight.gov and the SBA's website—which provides PPP information that includes:

- borrower information (name, address, payroll and financial information, employee count, NAICS Code, etc.);
- lender information (name, etc.);
- loan information (amount, approval date, term, etc.); and
- forgiveness information (amount, date, etc.).

Wilson Decl., Ex. B; RJN 6-7.

In addition to the public information that PandemicOversight.gov provided in spreadsheets, ProPublica sorted this data into a searchable format. Relator scanned these public sources sifting for entities that may have improperly received PPP loans. It goals: take advantage of information published by the federal government, as refined by public policy watchdogs; ask the federal government to investigate the alleged and speculative fraud; and then pursue further gains when, as here, the government refuses to pursue a non-existent fraud investigation. *See* Wilson Decl., Ex. C; RJN 6-7.

To that end, Relator has a single, conclusory allegation about NDM's intent concerning the PPP loan. It claims NDM "knew full well" that it was ineligible to receive a PPP loan because it is a "sophisticated" entity. Compl. ¶ 4. Relator offers

no other information or allegation to directly or indirectly suggest that NDM knew, at the time it applied for the loan in early 2020, that it was ineligible to receive this newly-created class of payroll loan. The Complaint contains no statements from individuals who worked inside NDM, nor worked as agents for NDM. There is nothing to support this conclusion, other than Relator's industrial-scale FCA complaint factory and speculation. Indeed, the SBA regulations referenced above directly contradict this allegation. Compl., ¶ 44.

The Complaint was filed under seal in July 2022, and remained under seal while the government considered whether to investigate the allegations in the Complaint. On April 25, 2025, the government declined to investigate NDM and the Court duly ordered the Complaint unsealed. Dkts. 35-36.

## III. LEGAL STANDARD

Fed.R.Civ.P. 12(b)(6) supports dismissal where there is a "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Nonetheless, "a plaintiff's obligation to provide the 'grounds' of [her or] his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting Fed.R.Civ.P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must evaluate the complaint as a whole, along with other materials courts ordinarily

examine at this early stage, including "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Courts are not obligated to accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and courts "may look beyond [a] plaintiff's complaint to matters of public record" *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).

Under Fed.R.Civ.P. 9(b), a plaintiff must plead each element of a fraud claim with particularity. That is, the plaintiff "must set forth more than the neutral facts necessary to identify the transaction." *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (quoting *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.*), 42 F.3d 1541, 1548 (9th Cir. 1994)). A fraud claim must be accompanied by "the who, what, when, where, and how" of the fraudulent conduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper*, 137 F.3d at 627). Statements of the time, place, and nature of the alleged fraudulent activities are sufficient, but mere conclusory allegations of fraud are not. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). In the corporate context, allegations of fraud "should [identify] the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations." *Id.*

## IV. <u>ARGUMENT</u>

The Complaint is a series of plain references to the elements of an FCA claim, offered as the "who, what, when, where, and how" of NDM's fraud.[2] But the Complaint does not identify a single individual is who engaged in this purported fraud. Nor does it claim that NDM ever was aware of a specific prohibition of its claimed ineligibility. Revealing the emptiness of its allegations, Relator actually

---

[2] While Relator makes a one-off reference to potential bank and wire fraud, *see* Compl. ¶¶ 12-13, the Complaint only pleads one cause of action under the FCA.

pleads the opposite: that NDM was a mortgage company and loan servicer "eligible" for PPP loans. Compl., ¶ 44.

The only facts with any substance to them—i.e., the amount of the PPP loan, the NAICS code, the date of the PPP loan and its forgiveness—all derive from various public sources. As such, Relator is an outsider. It is not an insider, blowing the whistle with a genuine FCA claim. It is not the original source of this information, as required for its own eligibility as a "relator" under the FCA. Its claims are thus precluded by the public disclosure bar. Additionally and related to its "outsider" position, Relator has not, and cannot, to plead fraud with particularity—specifically, that NDM had any knowledge of, or intent in making, a false statement. From its own Complaint, there is not even a false representation due to NDM's eligibility for the PPP loan. Combined, Relator's empty allegations that were cherry-picked from public information, all warrant dismissing this matter with prejudice.

### A. <u>The Public Disclosure Bars the Complaint's Lone Cause of Action</u>

While the FCA provides financial incentives to encourage relators with genuinely valuable insider information to expose fraudulent conduct, it also precludes recovery by "parasitic" relators "who have no significant information of their own to contribute." *U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 577 (9th Cir. 2016); *see also, e.g., Graham County Soil and Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 294-95 (2010). This preclusion is commonly referred to as the "public disclosure bar."

The public disclosure bar requires dismissal to an action that is derived from "substantially the same allegations or transactions" that have been "publicly disclosed" unless the relator is the "original source of the information." 31 U.S.C. § 3730(e)(4)(A). The FCA's public disclosure bar reads, more fully, as follows:

> The court **shall** dismiss an action or claim under this section . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . in a congressional, Government Accountability Office, or other **Federal report**, hearing, audit, or

> investigation; or from the **news media**, unless. . . the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A)(ii)-(iii) (emphasis added).

An "original source" means

> "an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e)(4)(B).

The public disclosure bar makes sense within the FCA scheme. Those with original, insider information need an outlet, and a reward, for disclosing fraud. The public disclosure bar thus anticipates and combats "opportunistic individuals from bringing *qui tam* actions—and sharing in the government's recovery—when they have done nothing to expose the allegations of fraud." *Campbell v. Redding Medical Center*, 421 F.3d 817, 820 (9th Cir. 2005). It places a burden on the relator to establish that he/she/it is the original source of information—otherwise, dismissal is obligatory. *See United States ex rel. Biddle v. Board of Trustees of the Leland Stanford, Jr. Univ.*, 161 F.3d 533, 540 (9th Cir. 1998), *cert denied*, 526 U.S. 1066 (1999). Relator has failed to meet this burden.

Courts use a two-part inquiry to determine whether the public disclosure bar applies. *United States ex rel. Calva v. Impac Secured Assets Corp.*, 2018 WL 6016152, at *3 (C.D. Cal. June 12, 2018). First, "the Court must determine whether there was a prior public disclosure of the . . . transactions underlying the *qui tam* suit through one of the enumerated sources." *Id.* (internal quotations and citations omitted). A "transaction" refers to the disclosure of "facts from which fraud can be inferred." *Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154, 1167 (9th Cir. 2024). The Supreme Court has observed that the public disclosure bar is thus "wide-

reaching" because "Congress covered not only the disclosure of 'allegations' but also 'transactions,' a term that courts have recognized as having a broad meaning. *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 408 (2011).

Second, "[i]f there has been a public disclosure, the Court must then determine whether the relator is an 'original source' within the meaning of the statute." *Impac Secured Assets Corp.*, 2018 WL 6016152, at *3.

1. <u>The Complaint Is Founded on Publicly Available Information</u>

A *qui tam* complaint is based on publicly disclosed information if the allegations or transactions described are "substantially similar" to those already in the public domain. *Mateski*, 816 F.3d at 573. The public domain includes various sources, including federal government reports and news media. *United States ex rel. Found. Aiding the Elderly v. Horizon West*, 265 F.3d 1011, 1014 (9th Cir. 2001).

Relator bases its FCA allegations on publicly-disclosed transactions. These transactions were enumerated before the Complaint, thereby fully-informing Relator in advance of the Complaint. Relator's name itself establishes that it sought to make a business of this public information, all of which appeared in: (1) federal government reports regarding PPP recipients and (2) websites published by national news companies.

The Complaint alleges that NDM received a PPP loan from Texas Capital Bank. Compl. ¶ 22. The U.S. Government maintains and operates PandemicOversight.gov, a website identifying COVID-19 relief spending, including PPP loans and information about borrowers, lenders, and loans.[3] The Pandemic Response Accountability Committee of the Council of the Inspectors General on Integrity and Efficiency maintains the website and the PPP data, which qualifies as a "report" for purposes of the public disclosure bar. *See* RJN 6-7; *U.S. ex rel. Rosner*

[3] The website had searchable dashboards prior to July 14, 2025, and it now provides the same data in downloadable format through the SBA at https://data.sba.gov/dataset/ppp-foia. See Wilson Decl. ¶ 5.

*v. WB/Stellar IP Owner, LLC*, 739 F. Supp. 2d 396, 405, 407 (S.D.N.Y. 2010) (providing that a "database available on a government website" can qualify as a "report" under the public disclosure bar when "readily available," "free," and "easily navigable"). Similarly, the downloadable data on SBA's website (https://data.sba.gov/dataset/ppp-foia, last visited Oct. 6, 2025) qualifies as a "report" for purposes of the public disclosure bar. *See id*; RJN 6-7.

Moreover, the same information is published on ProPublica.org, a news media provider, in a searchable format, and "information publicly available on the Internet generally qualifies as 'news media.'" *See* RJN 7; *United States ex rel. Hong v. Newport Sensors, Inc.*, No. SACV 13-1164-JLS-JORx, 2016 WL 8929246, at *5 (C.D. Cal. May 19, 2016) (citing *United States ex rel. Carter v. Bridgeport Educ., Inc.*, No. 10-CV-1401-JLS-WVG, 2015 WL 4892259, at *6 n.4 (S.D. Cal. Aug. 17, 2015)).

Importantly, at least one federal court has analyzed the identical PPP loan data at PandemicOversight.gov in response to another *qui tam* complaint filed by Relator. That Court held that it is a federal report within the meaning of the public disclosure bar. *See United States ex rel. Relator LLC v. Koostra*, No. 1:22-CV-000924-TLN-CDB, 2024 WL 3666470, at *3-4 (E.D. Cal. Aug. 6, 2024) (dismissing complaint pursuant to public disclosure bar).

Next, courts use the "X + Y = Z" formula to determine "substantial similarity." Under this formula, Z represents the inference of fraud, and X and Y represent the elements of fraud. "In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, *i.e.*, the conclusion that fraud has been committed." *Id.* at 571.

Here, the "X" is the publicly available information (*e.g.*, on government websites and ProPublica.org) that reports NDM received a PPP loan. The "Y" represents the industry NAICS Code of 522291, which Relator interprets to mean NDM is a "lender" and therefore ineligible for PPP loans, even though it is mistaken.

These two variables (which originate from public sources) are the exclusive indicia cited by Relator to establish "Z"—the alleged fraud. As a result, Relator alleges NDM engaged in fraud from two facts that were publicly disclosed prior to the filing of the Complaint: that (1) NDM applied for and accepted a PPP loan and (2) that it is a financial lender. That's it. This is the exact type of Complaint that the public disclosure bar seeks to rid from federal courts.

In *Koostra*, Relator also alleged a defendant illegitimately received a PPP loan because it selected an NAICS Code that indicated it was a lending company and therefore ineligible. *Koostra*, 2024 WL 3666470, at *4. After conducting the X + Y = Z analysis, the *Koostra* court concluded "the material elements of the alleged fraud —that Defendants applied for a PPP loan despite being a mortgage lender—were publicly disclosed" and "Relator's claim and the prior disclosures are substantially similar." *Id.* at *4-5.

In the same way, Relator's allegations concerning NDM are "substantially similar" to previously publicly disclosed information that NDM received a PPP loan and that it is a mortgage lender. The Complaint must be dismissed under the public disclosure bar. Other District Courts in California are in accord. *Id.*; *United States ex rel. Relator LLC v. Steven Sunshine et al.*, No. 8:23- CV-00134-JVS-ADS (C.D. Cal. June 30, 2025); *United States ex rel. Relator LLC v. Kellog*, No. 23-cv-118-CAB-BLM, 2025 WL 897439, at *3 (S.D. Cal. Mar. 24, 2025).

2. <u>Relator Is Not the Original Source of the Public Information</u>

Because the transactions and allegations Relator states in its Complaint were publicly disclosed in advance of the Complaint, Relator bears the burden of establishing it is the "original source" of the information. It makes no attempt to do so in the Complaint. Nor can it. Relator is a limited liability company, with no professional relationship with NDM. The only place it could have obtained the information in support of the Complaint are publicly-available government reports

and news media—both of which demand dismissal. 31 U.S.C. § 3730(e)(4)(A)(ii)-(iii).

An "original source" is an "individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information . . . [or] who has knowledge that is **independent of** and **materially adds to** the publicly disclosed allegations or transactions, and has voluntarily provided the information to the Government before filing an [*qui tam*] action." 31 U.S.C. § 3730(e)(B) (emphasis added). Because Relator has failed to establish it is the original source, the Court must dismiss this action. *Id.* at § 3730(e)(4)(A).

Relator could not have disclosed information to the government prior to a public disclosure because Relator was formed as an LLC after the information was publicly disclosed by the federal government. *See* Wilson Decl., Ex. A; RJN 5. This means that Relator did not even exist until approximately two years after NDM received its PPP loan, and Relator never had, nor does it allege, any prior relationship with NDM. Nor does it allege any non-public information about NDM, its PPP loan, the forgiveness of the PPP loans, or any knowledge by anyone at NDM that it was ineligible for a PPP loan. This explains the Complaint's general and conclusory allegations, which merely recycles publicly-available information, with hollow statements of fraud.

Finally, Relator tacitly acknowledges its concern that it cannot overcome the public disclosure bar. It attempts to plead around this barrier with two sentences, claiming the Complaint is "not based upon prior public disclosures of allegations or transactions" and "[t]o the extent that there has been a public disclosure unknown to Relator, it is the 'original source.'" Compl. ¶ 62. The mere recitation of the elements of the public disclosure bar does not mean it has established that it is the original source of NDM's PPP loan data or the still missing basis for the fraud allegations.

The simple prohibition of the Complaint, in anticipation of Relator's repetition of public-available information, fully warrants dismissal. That dismissal should be

with prejudice unless Relator can offer reliable evidence establishing each of the following: (i) Relator possessed some non-public information on which it based its whistleblower claims against NDM; (ii) that NDM was in fact ineligible for a PPP loan, despite Relator's own allegations that indicate otherwise (Compl., ¶ 44); and (iii) that Relator obtained this original information from a person acting on NDM's behalf in or around 2020, when it applied for the PPP loan.

**B. Relator Fails to Plead Facts Demonstrating NDM's Knowledge**

The FCA imposes liability only where a defendant acted "knowingly," meaning with actual knowledge, deliberate ignorance, or reckless disregard for the truth. 31 U.S.C. § 3729(b)(1). Thus, "innocent mistakes, mere negligent misrepresentations and differences in interpretations are not sufficient for False Claims Act liability to attach." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006) (internal quotation omitted). While Rule 9(b) allows scienter to be alleged generally, the Ninth Circuit still requires factual allegations supporting a plausible inference of knowledge. *United States ex rel. Winter v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1122 (9th Cir. 2020).

Here, Relator's allegations of NDM's scienter are not only conclusory, they are exculpatory. Starting with the latter, the Complaint expressly identifies the following business as "eligible" for PPP loans, which captures NDM's business: "Mortgage companies primarily engaged in the business of servicing loans are eligible." Compl. ¶ 44. Relator has no allegation of fact that negates NDM's eligibility for the PPP loan.

Moreover, the Complaint pleads no facts to suggest that NDM even knew that it was ineligible to receive a PPP loan, nor that, despite this knowledge, it acted with fraudulent intent. Plaintiff does not, for example, point to any contemporaneous communications, directives, or instructions that would evidence knowledge of falsity. Courts rightfully have rejected such pleadings. *See Durkin v. Cnty. of San Diego*, 300 F. Supp. 3d 1107, 1129 (S.D. Cal. 2018) (dismissing FCA claim because allegations

of scienter focused not on whether defendant knew that they were making a false statement, but whether defendant was aware of the requirements to obtain funding).

The entirety of the Complaint's allegations regarding NDM's knowledge of PPP loan ineligibility are as follows:

- "Nations Direct Mortgage, LLC is a sophisticated company with experience in the lending industry. They knew full well money lenders are not eligible to receive SBA 7(a) loans or PPP loans." Compl. ¶ 4.
- "[Defendants] knew full well that his [sic][4] many false statements to the government and SBA and his activities in seeking this loan and loan forgiveness were illegal, but were not stopped by anybody." *Id.* ¶ 18.
- "NDM is a money lender. They are clearly not allowed to receive SBA loans. NDM, as a sophisticated Defendant, should have known this. They disregarded these clear rules." *Id.* ¶ 45.

These thin allegations, based on the unsupported statement that NDM is "sophisticated" and accordingly must have known it was ineligible to receive federal funding, are mere inferences. They are too attenuated to satisfy the Rule 9(b) pleading standard in any circumstance, but it is particularly lacking here, where NDM's loan stemmed from an unprecedented federal program that was established to support private enterprise during a worldwide, emerging crisis. NDM is a successful and scrupulous company. But it did not, along with countless other businesses and individuals and governments, have all the answers to the pandemic in early 2020. Even assuming NDM was ineligible for a PPP loan (a fact NDM disputes, and which Relator also does not consistently allege [*see* Compl. ¶ 44]), Relator arms the Court with nothing to infer that this misunderstanding was anything more than a difference

[4] The Complaint contains similar typos, presumably because this pleading is largely a copy-and-paste job from its other FCA complaints around the country. One further example being an erroneous venue allegation: "[v]enue is proper in this district . . . because the Defendant's acts that form the basis of this Complaint occurred in the *Northern* District of California." *Id.* ¶ 61 (emphasis added).

in interpretation of the then-evolving SBA rules—to the extent it was ineligible in the first instance. Relator's allegations fall well short of meeting the ordinary plausibility standard—let alone the required heightened showing under Rule 9 for claims sounding in fraud.

Finally, the Complaint references NDM's profitability, alleging that because the company "is a multi-state, very successful lending business" it therefore "did not need any financial assistance" and thus acted knowingly when it certified "economic necessity." Compl. ¶ 48. But even if NDM was profitable after receiving the loan, that has no bearing on the falsity of any statement made in a PPP loan application. It is an astonishingly unsupportable, and irrelevant allegation to claim NDM had no economic necessity in 2020 to secure available funding as the global economy and social structure was crumbling. Disagreement with a borrower's judgment is not enough to establish scienter. *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th Cir. 1998) ("The requisite scienter is the knowing presentation of what is known to be false.").

In any event, Relator fails to specifically allege that NDM was in fact profitable during the relevant period. *See generally* Compl. Rather, the Complaint only claims that the mortgage industry as a whole experienced record profits (*id.* ¶ 6 n. 3), and that NDM had "no need" for a loan because it was "very successful" (*id.* ¶ 48). These threadbare allegations come nowhere close to satisfying the heightened Rule 9(b) pleading requirements and require dismissal of the Complaint.

## V. <u>CONCLUSION</u>

For the reasons above, Defendant requests that the Court dismiss Plaintiff's Complaint with prejudice and close the case.

## <u>WORD COUNT CERTIFICATION</u>

The undersigned, Daniel C. Silva, counsel of record for Defendant Nations Direct Mortgage, LLC, certifies that this brief contains 4932 words, which complies with the word limit of L.R. 11-6.1.

DATED: October 6, 2025

Respectfully submitted,

BUCHALTER
A Professional Corporation

By: /s/ *Daniel C. Silva*
Daniel C. Silva
Kalley R. Aman
David S. Wilson
*Attorneys for Defendant*
*Nations Direct Mortgage, LLC*

BN 93392231v5