BUCHALTER
A Professional Corporation
Daniel C. Silva (SBN: 264632)
Kalley R. Aman (SBN 217337)
David S. Wilson (SBN: 348043)
655 West Broadway, Suite 1600
San Diego, CA 92101-8494
Telephone: 619.219.5335
Email: dsilva@buchalter.com
kaman@buchalter.com
dwilson@buchalter.com

*Attorneys for Defendant*
*Nations Direct Mortgage, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

*ex rel.* RELATOR LLC, a California limited liability company,

Relator,

vs.

NATIONS DIRECT MORTGAGE, LLC, a California Limited Liability Company; and DOES 1-10,

Defendants.

CASE NO. 2:22-cv-04784-SPG-MAA

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

DATE: December 10, 2025
TIME: 1:30 p.m.
COURTROOM: 5C

Complaint Filed: July 13, 2022
Judge: Sherilyn Peace Garnett

## TABLE OF CONTENTS

**Page**


**I.** INTRODUCTION ........ 1

**II.** ARGUMENT ........ 2

**A.** The Opposition Alleges Facts Not Present in the Complaint ........ 2

**B.** Relator's Complaint Fails Under the Public Disclosure Bar ........ 3

1. Public Disclosure ........ 3

2. Original Source ........ 3

3. Substantial Similarity ........ 4

a. The "X" and "Y" are From Publicly-Disclosed Information ........ 5

b. Similar FCA Allegations in the Complaint have been Dismissed Elsewhere under the Public Disclosure Bar ........ 7

c. The Opposition Repeatedly Admits that NDM May, in Fact, have been Eligible for a PPP Loan ........ 7

**C.** Relator's Inadequate Scienter Allegations Require Dismissal ........ 9

**III.** CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Campbell v. Redding Med. Center*,
421 F.3d 817 (9th Cir. 2005) .......... 4

*Millar Bay Area Rapid Tran. Dist.*,
236 F.Supp.2d 1110, 1113 (N.D. Cal. 2002) .......... 9

*Scott v. Kuhlmann*,
746 F.2d 1377 (9th Cir. 1984) .......... 3

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 9

*United States v. Allergan, Inc.*,
46 F.4th 991 (9th Cir. 2022) .......... 6

*U.S. ex rel. Hastings v. Wells Fargo Bank, NA, Inc.*,
656 Fed. App'x 328 (9th Cir. 2016) .......... 8

*U.S. ex rel. Mateski v. Raytheon Co.*,
816 F.3d 565 (9th Cir. 2016) .......... 5

*U.S. ex rel. Relator LLC v. Baxter*,
2025 WL 1343076 (N.D. Cal. May 8, 2025) .......... 8, 9, 10

*U.S. ex rel. Relator LLC v. Cardinalli, et al.*,
No. 5:23-CV-00113-HDV-DTB, Dkt. No. 53 (C.D. Cal. Sept. 15, 2025) .......... 3

*U.S. ex rel. Relator LLC v. iLink Emps. Co.*,
No. 5:22-CV-01004-RGK-DTB, 2024 WL 3892980 (C.D. Cal. July 11, 2024) .......... 9, 10

*U.S. ex rel. Relator LLC v. Kellog*,
No. 23-CV-118-CAB-BLM, 2025 WL 897439 (S.D. Cal. Mar. 24, 2025) .......... 7

*U.S. ex rel. Relator LLC v. Kootstra*,
No. 1:22-CV-00924-TLN-CDB, 2024 WL 3666470 (E.D. Cal. Aug. 6, 2024) .......... 3, 7

*U.S. ex rel. Relator LLC v. Tennyson, et al.*,
No. 2:23-CV-05887-SRM-SSC, Dkt. No. 75 (C.D. Cal. Sept. 29, 2025) .......... 6, 10

*U.S. ex rel. Relator LLC v. Uhler, et al.*,
No. 2:23-CV-00499-CAS-MBK, Dkt. No. 57 (C.D. Cal. Oct. 6, 2025) .......... 6, 10

*U.S. ex rel. Ruhe v. Masimo Corp.*,
977 F. Supp. 2d 981 (C.D. Cal. 2013), aff'd, 640 F. App'x 666 (9th Cir. 2016) .......... 8

*U.S. ex rel. Sam Jones Co., LLC v. Biotronik, Inc.*,
152 F.4th 949 (9th Cir. 2025) .......... 8

**Federal Statutes**

31 U.S.C. § 3730(e)(4)(A) .......... 3

**Other Authorities**

John Fraedrich, O.C. Ferrell, Jennifer Sawayda, and Jennifer Jackson, *Countrywide Financial: The Subprime Meltdown* (2014) .......... 11

# I. INTRODUCTION

Relator LLC's Opposition fails to rebut the two bases that warrant dismissal. First, its Complaint is a meritless attempt to exploit government-published information in the hopes that the Court will let its bare fraud allegations survive. Second, it undermines the False Claims Act ("FCA"), as opposed to enforcing it. The Opposition alleges that Defendant Nations Direct Mortgage, Inc. ("NDM"): (i) received a PPP loan, (ii) is in the consumer lending industry, and (iii) knew that some entities in its industry *may* have been ineligible for a PPP loan. These are not FCA allegations. The Complaint is silent on who specifically may have known this loan was obtained via fraud, when this unnamed person or persons knew this, or even how any specific person acted with the requisite fraudulent intent. Without those missing critical facts, the Complaint cannot be salvaged. Everything else in the Complaint equates to a bland recitation of the elements of an FCA claim.

Relator's claims must be dismissed under the public disclosure bar. The Opposition does not dispute that NDM's PPP loans were publicly disclosed before the Complaint. The Opposition is also silent on how Relator, a company that has never engaged with NDM, could plausibly or logically be the "original source" of the FCA allegations. With these points conceded through silence, the Complaint alleges facts "substantially similar" to those in public sources, which is prohibited.

Relator's claim must also, and independently, be dismissed for failing to allege scienter with sufficient particularity. Instead of clarifying the vague fraud allegation in the Complaint, the Opposition repeats them, hollowly alleging that NDM knew it made false statements on its PPP loan application. The Complaint has no particular facts demonstrating why or how NDM acted fraudulently. Simply claiming that NDM is "sophisticated" and that it "should have known" it was ineligible for a PPP loan is not enough. Indeed, the Opposition acknowledges that lenders like NDM were *not categorically prohibited* from PPP loan eligibility. Neither this, nor anything else in the Complaint, leads to an inference of fraud, fully demanding dismissal.

## II. ARGUMENT

### A. The Opposition Alleges Facts Not Present in the Complaint

The Complaint's insufficiency is most visibly displayed in the Opposition's assertion that "NDM's sole owner, CEO, and Director knowingly submitted—or caused to be submitted—the PPP First Draw Loan." Oppo., 3:17-19 (with references to the Complaint ¶¶ 1, 5, 8, 10, 18). The Complaint never once states the word "owner," "CEO," or "Director." It also does not identify any person who "submitted" NDM's PPP loan or forgiveness applications. By arguing these facts in the Opposition, without alleging them in the Complaint, Relator is telling the Court that its FCA cause of action is deficient.

The Complaint involves a single defendant, NDM. Yet paragraph 18 of the Complaint, which Relator cites in the citation from the Opposition in the preceding paragraph, references multiple defendants and also a natural person: "They knew full well that his many false statements to the government and SBA and his activities in seeking this loan and loan forgiveness were illegal, but were not stopped by anybody." Complaint, ¶ 18. NDM is the lone defendant, and is an LLC, not a natural person. References to "[t]hey" and "his" are thus irreconcilable with the facts here. On this basis alone, the Complaint must be dismissed because it makes the critical fraud allegation against defendant(s) that do not exist.

This confusion reflects more than the industrial-scale FCA litigation and recycled complaints filed by Relator, though this is a contributing factor. More critically, these failures are the result of Relator's lack of original information, and the absence of any fraud connected with NDM's PPP loans. Relator does not personally know of or possess any information that would support an FCA claim. To that end, the Complaint undermines the policy behind the FCA: exposing fraud at the expense of government funds. Relator itself is the party engaged in a money grab, without sufficient information or legal grounds. Permitting Relator to proceed on the Complaint will undermine—not enforce—the FCA by encouraging more

opportunistic enterprises that generate revenue from voluminous legal filings, all based on public information, wishing that at least some courts will allow their speculative FCA allegations to stand.

**B. Relator's Complaint Fails Under the Public Disclosure Bar**

1. <u>Public Disclosure</u>

Government publications disclosed NDM's PPP loan information. The government-operated PandemicOversight.gov and Small Business Administration ("SBA") websites declared to the world all the material facts alleged in the Complaint: that NDM received a PPP loan and that it is in the lending industry. Such federal databases qualify as "federal reports" under the FCA. *U.S. ex rel. Relator LLC v. Cardinalli, et al.*, No. 5:23-CV-00113-HDV-DTB, Dkt. No. 53, at 5-6 (C.D. Cal. Sept. 15, 2025). Moreover, the same information is published on ProPublica.org, which qualifies as "news media." *Id.* at 6; 31 U.S.C. § 3730(e)(4)(A).

Plaintiff does not oppose any of NDM's Requests for Judicial Notice (Dkt. 48), nor does it argue that PandemicOversight.gov and ProPublica.org are not "public sources" per the public disclosure bar. It merely argues that the public disclosure bar is an affirmative defense. Oppo., 6-7. This, however, means little. Courts can grant motions to dismiss on an affirmative defense if there is no material dispute of fact. *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). Relator acknowledges that these webpages include key information regarding NDM's PPP loan. Thus, there is no dispute that the sole and exclusive source of information in support of the Complaint is publicly-available information.

2. <u>Original Source</u>

Relator also fails to explain how it is the original source of these material facts. That is because Relator cannot provide "any information in the Complaint that materially adds to the public disclosures or shows that Relator had any independent knowledge of the alleged fraud." *U.S. ex rel. Relator, LLC v. Kootstra*, No. 1:22-CV-00924-TLN-CDB, 2024 WL 3666470, at *5 (E.D. Cal. Aug. 6, 2024).

Instead of identifying one specific and original factual allegation in the Complaint, Relator deflects its obligation to be the "original source" of this information, arguing incongruously that is does not need to be an "insider" to prevail on an FCA claim. Oppo., 6:24-7:7. Although Relator admits through this argument that it is not an insider, NDM never once asserted in its Motion to Dismiss that FCA claims must be brought by insiders. NDM instead moved to dismiss on the true FCA standard: Relator must offer original, non-public information in support of its Complaint, which it has not done. Naturally, an insider often alleges this type of information. Regardless, Relator is an "outsider." As an outsider, dismissal is proper where, as here, the relator does not offer any original, material information regarding a false claim by a defendant. The public disclosure bar anticipates and combats "opportunistic individuals from bringing *qui tam* actions—and sharing in the government's recovery—when they have done nothing to expose the allegations of fraud." *Campbell v. Redding Med. Center*, 421 F.3d 817, 820 (9th Cir. 2005).

3. <u>Substantial Similarity</u>

Relator presents a single argument in opposition to the public disclosure bar: the Complaint's allegations are not "substantially similar" to the information in the public sources. Oppo., 6-10. But Relator copied every material fact in the Complaint from public sources. The Complaint states that NDM made three false statements: that (1) it was eligible for a PPP loan; (2) the loan was necessary to keep NDM afloat during the pandemic; and (3) NDM would use the funds for payroll expenses.[1] But Relator has not pled specific facts that demonstrate NDM knowingly made a false statement. The only statements made in the twenty-three page Complaint regarding NDM's state of mind are as follows:

- "Nations Direct Mortgage, LLC is a sophisticated company with experience in the lending industry. They knew full well money lenders are

[1] As to this third statement, Relator pled no facts in support. And the Opposition does not argue that NDM used the PPP funds for a purpose other than payroll. The Court should thus treat this argument as abandoned.

not eligible to receive SBA [] loans or PPP loans . . . ." Complaint ¶ 4.

- "Nations Direct Mortgage, LLC is a business with a multitude of lending operations in states across the United States. Defendant's stock in trade is money . . . They knew full well that his [*sic*] many false statements to the government and SBA and his [*sic*] activities in seeking this loan and loan forgiveness were illegal . . . ." *Id.* ¶ 18.
- "NDM is a money lender. They are clearly not allowed to receive SBA loans. NDM, as a sophisticated Defendant, should have known this. They disregarded these clear rules." *Id.* ¶ 45.
- "NDM is a multi-state, very successful lending business. Discovery will reveal where the millions in PPP funds where [sic] actually distributed, but certainly NDM did not need any financial assistance. This business was lending other people money. NDM's 'stock in trade' is money and business was booming." *Id.* ¶ 48.

The Opposition provides no independent source of these critical allegations in the Complaint. No individual can testify to these allegations. There is no paperwork in support. There is only the publicly-available information at the time the Complaint was filed, namely: (i) NDM received a PPP loan in April 2020; (ii) NDM reported an NAICS Code of 522291, which signifies it is a "consumer lender"; and (iii) federal regulations stated that "financial businesses primarily engaged in the business of lending" are ineligible to receive PPP loans. The material allegations were not originally-sourced from Relator. They were cut-and-pasted from public sources.

a. <u>The "X" and "Y" are From Publicly-Disclosed Information</u>

The Ninth Circuit's "substantial similarity" analysis supports dismissal. Under the X + Y = Z test, the Complaint's allegedly false claim (that NDM received a PPP loan and has an NAICS lender code—the "X") and the circumstances that make the claim false (that NDM was ineligible, the "Y") are both publicly-sourced. Relator's silence on this critical point alone should result in dismissal with prejudice. The fraud alleged (the "Z") must therefore have been predicated on the publicly-disclosed X and Y, which violates the public disclosure bar. *U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 571 (9th Cir. 2016). Stated differently, the absence of an X or Y from

non-public sources renders the case devoid of original information to support an FCA claim.

In its Complaint, the *only* fact that Relator offers in order to establish NDM's alleged ineligibility for a PPP loan is that it has an NAICS code of 522291, placing it within the "consumer lending" industry. Complaint ¶ 3. NDM's NAICS code was conspicuously disclosed on PandemicOversight.gov and ProPublica.org. RJN Exs. C-D. In other words, the only information Relator has about NDM from which fraud may be inferred (i.e., Z) is from publicly-available sources.

The limited amount of information in the Complaint should not come as a surprise to the Court. A professional FCA *qui tam* plaintiff like Relator must be able to sift through significant amounts of government data to manufacture its lawsuits. The simplest way forward: compare published data about every entity that received a PPP loan with loan recipients that operate in arguably prohibited industries. From there, Relator only needed to draft a generic complaint with the basic FCA elements, and insert accurate proper nouns (e.g., "Nations Direct Mortgage, LLC"), pronouns (e.g., they or his), and NAICS code.

Attempting to distort its *modus operandi*, Relator cites *United States v. Allergan, Inc.*, 46 F.4th 991 (9th Cir. 2022), for the proposition that the public disclosure bar is overcome where a plaintiff offers "genuinely valuable information." Oppo., 6-7. This is not true. Relator took this citation out of context, in the same way it took publicly-available information and sought to allege fraud. The entire sentence from *Allergan* reads as follows: "The public disclosure bar seeks to strike a balance between encouraging suits by whistle-blowers with genuinely valuable information, while discouraging litigation by plaintiffs who have no significant information of their own to contribute." *Allergan, Inc.*, 46 F.4th at 994. Relator is not in the former camp—a whistle-blower. It is, however, squarely in the latter camp. Every relevant fact it alleges is from public sources. The public disclosure bar demands dismissal here, in order to "discourag[e] litigation by [Relator and other] plaintiffs who have

no significant information of their own to contribute."

b. Similar FCA Allegations in the Complaint have been Dismissed Elsewhere under the Public Disclosure Bar

Relator cites two cases to support its claim that all of the relevant information in the Complaint was not publicized. Oppo., 8-10 (citing *U.S. ex rel. Relator LLC v. Tennyson, et al.*, No. 2:23-CV-05887-SRM-SSC, Dkt. No. 75 (C.D. Cal. Sept. 29, 2025); *U.S. ex rel. Relator LLC v. Uhler, et al.*, No. 2:23-CV-00499-CAS-MBK, Dkt. No. 57 (C.D. Cal. Oct. 6, 2025)). While these cases are two of the dozens of Relator's PPP-focused FCA *qui tam* actions, the dissimilar defendants in those cases are a private country club (*Uhler*) and a company in the "finance and insurance" industry according to ProPublica information (*Tennyson*). They are unhelpful in determining the (un)originality of the Complaint's factual allegations here.

The more analogous case is *Kootstra*, 2024 WL 3666470. There, Relator made nearly identical, conclusory allegations about a defendant who was in the lending industry: it was ineligible to receive a PPP loan based on its NAICS code and that it lacked economic necessity for the loan. After conducting the X + Y = Z analysis, the *Kootstra* court dismissed the complaint, holding that "the material elements of the alleged fraud—that defendants applied for a PPP loan despite being a mortgage lender—were publicly disclosed," and that from such information, "readers or listeners may infer . . . the conclusion that fraud has been committed." *Id.* at *4; *see also U.S. ex rel. Relator LLC v. Kellog*, No. 23-CV-118-CAB-BLM, 2025 WL 897439, at *3 (S.D. Cal. Mar. 24, 2025) (same). *Kootstra* and *Kellog* are directly on-point. They were presented and analyzed in the Motion to Dismiss. Relator's failure to address them should be accepted as an admission that they fully support dismissal.

c. The Opposition Repeatedly Admits that NDM May, in Fact, have been Eligible for a PPP Loan

Throughout the Opposition, Relator acknowledges that NDM was not categorically prohibited from obtaining a PPP loan. It thus notes that "lending

institutions were ***generally*** excluded from participating…." Oppp., 2:21 (added emphasis). Similarly, Relator is effectively arguing for a dismissal when it states that "not ***all*** businesses in the consumer lending industry (which NAICS 522291 denotes) were excluded from the PPP program." *Id*. at 9:22-24 (orig. emphasis). The Complaint at ¶ 45 itself acknowledges that many lenders are eligible for PPP loans.

Moreover, NDM was not necessarily excluded from a PPP loan just because some businesses in the consumer lending industry were prohibited. The Complaint fails to mention that businesses operating within NAICS 522291 can primarily operate as a loan *servicer*, while also separately lending funds, and thus make the lender eligible for PPP loans. The Complaint alleges nothing in particular about NDM's business model. It merely states that its "business was lending other people money." Complaint ¶ 48. Relator makes no specific allegation that a certain percentage of NDM's business comes from lending, as opposed to servicing loans. It does not identify any original information regarding what the company does, how it makes money, or who its customers are.

Evidently running away from its fatal reliance on the NAICS code, Relator then asserts that the code is an "innocuous" fact. Oppo., 9:2-10. NDM agrees. The NAICS code is inconsequential when asserting an FCA claim. The foundations of a valid FCA claim are a defendant's knowledge, operations, and fraudulent intent—all of which must be alleged with original information of a potential fraud. Relator does not allege anything related to NDM's business practices that provide a "state of facts from which an observer could deduce that fraud is afoot." *U.S. ex rel. Sam Jones Co., LLC v. Biotronik, Inc.*, 152 F.4th 949, 947 (9th Cir. 2025). The public disclosure bar applies because Relator's allegations do not "add value to what the government already knew." *U.S. ex rel. Hastings v. Wells Fargo Bank, NA, Inc.*, 656 Fed. App'x 328, 331–32 (9th Cir. 2016). It should be dismissed with prejudice on this basis alone because the Opposition offers no plausible alternative source of information to support the Complaint, rendering any amendment futile that would unnecessarily

consume judicial resources. *Millar Bay Area Rapid Tran. Dist.*, 236 F.Supp.2d 1110, 1113 (N.D. Cal. 2002).

### C. Relator's Inadequate Scienter Allegations Require Dismissal

Relator seizes on Rule 9(b)'s statement that knowledge "may be alleged generally." "Generally" in Rule 9(b) does not, however, "mean that Relator can rely on conclusory statements." *U.S. ex rel. Relator LLC v. Baxter*, 2025 WL 1343076, at *6 (N.D. Cal. May 8, 2025). To adequately plead scienter, a complaint "must set out sufficient factual matter from which a defendant's knowledge of fraud might reasonably be inferred." *Id.* The mere allegation of noncompliance with a regulation is insufficient to prevail on an FCA claim. *U.S. ex rel. Ruhe v. Masimo Corp.*, 977 F. Supp. 2d 981, 991 (C.D. Cal. 2013), aff'd, 640 F. App'x 666 (9th Cir. 2016) ("A violation of a regulatory provision, in the absence of a knowingly false or misleading representation, does not amount to fraud.").

Relator asserts that NDM has not moved to dismiss for a failure to plead fraud with particularity. Oppo., 10, n. 8. This is wrong. This is exactly what the motion to dismiss alleges. *See* Dkt. 47 at Mot. 2:10, and Memo of P&A 1:19, 7:8-10 ("Relator has not, and cannot, plead fraud with particularity—specifically, that NDM had any knowledge of, or intent in making, a false statement."), and 13:23-25 ("the Complaint pleads no facts to suggest that NDM even knew that it was ineligible to receive a PPP loan, nor that, despite this knowledge, it acted with fraudulent intent.").

NDM's scienter argument in support of dismissal is twofold: first, the Complaint does not sufficiently plead facts under Rule 9(b) to show that NDM was ineligible to receive a PPP loan or that NDM did not need a PPP loan; and second, that NDM did not knowingly make a false statement (or any false statement) regarding its eligibility or need for a loan. Without these allegations, the Complaint offers only "conclusory, unwarranted deductions of fact, [and] unreasonable inferences," which the Court is not "required to accept as true" in a motion to dismiss. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

In other words, Relator's entire theory of NDM's state of mind is inadequately pled. It can only assert that, because NDM was "sophisticated" and loaned money to others, it must have known that it was ineligible to receive a PPP loan and did not need a PPP loan. These are conclusions that do not logically follow from the allegations—thus exposing their inadequacy. Courts have repeatedly dismissed similarly amorphous, unsubstantiated complaints by Relator, even where Relator prevailed on the public disclosure bar (though it fails here). *U.S. ex rel. Relator LLC v. iLink Emps. Co.*, No. 5:22-CV-01004-RGK-DTB, 2024 WL 3892980, at *3 (C.D. Cal. July 11, 2024) ("Although 'intent and knowledge' can be alleged generally [under 9(b)'s heightened pleading standard], conclusory allegations do not suffice. Here, other than reciting the legal element of scienter, the Complaint is devoid of any relevant factual allegations and, therefore, cannot demonstrate Defendants' knowledge and intent."); *Baxter*, 2025 WL 1343076, at *6.

The *Baxter* and *iLink* cases were dismissed for lack of scienter. In *Baxter*, Relator alleged the defendant lied when it claimed it needed a PPP loan because it was a private country club and could simply increase its members' dues or sell some of its land. The court was unpersuaded, finding the complaint was "rife with conclusory allegations" that were insufficient to find defendants had "knowledge or an intent to deceive." *Baxter*, 2025 WL 1343076, at *7. Similarly, in *iLink*, the court reasoned in granting the motion to dismiss that merely disagreeing with a statement made in defendant's PPP certification and plainly stating defendant "made false statements with respect to the PPP Loan Certifications does not meet Rule 8's plausibility requirement, much less Rule 9(b)'s particularity requirement." *iLink*, 2024 WL 3892980, at *2.

The NDM Complaint is also dissimilar from two other cases cited by Relator's Opposition, *Uhler* and *Tennyson*. In those cases, Relator established the "knowledge" element by identifying the individual defendants who filled out the company's PPP loan applications along with their specific, extensive experience as corporate

executives. *Tennyson*, Dkt. No. 75 at 15. No such individual defendants, and no such allegations, are present here for NDM. The Complaint contains no similar and necessary facts such as: which NDM employee signed the PPP loan application; evidence of knowledge by any corporate employee of the SBA's (in)eligibility guidance; and intent to deceive. Rule 9 demands that Relator allege specific, original facts that NDM knew that it was ineligible to receive a PPP loan but applied anyway. It has failed to do so and so the Complaint must fail as well.

Finally, Relator attempts to prop up its claim that NDM had no need for a payroll loan in early 2020 because "the residential real estate industry posted record high profits during 2019, 2020, and 2021. Defendant's many companies,[2] operating throughout the country, did not close down or show any decline in profitability." Complaint, 3 n.3. This allegation—devoid of any support and grammatically incompatible with the single-defendant Complaint—has no bearing on whether NDM itself was experiencing financial uncertainty. Nothing in the Complaint alleges specific facts about NDM's financial situation, such as the company's revenue, its exposure to economic uncertainty during the pandemic, or whether it was expanding prior to 2020.

Relator's argument that NDM was fiscally doing well simply because it continued to operate—e.g., it was lending other people money (Complaint, ¶48)—is similarly unavailing and historically suspect. *See*, *e.g.*, John Fraedrich, O.C. Ferrell, Jennifer Sawayda, and Jennifer Jackson, *Countrywide Financial: The Subprime Meltdown* (2014). Plaintiff has also failed to demonstrate scienter with regard to NDM's economic necessity assertion. Simply stating as much does not sufficiently allege that it was so under Rule 9.

---

[2] Plaintiff erroneously (and repeatedly) claims that the defendant in this case is an individual person, and that this person owns multiple companies. This is incorrect—the only named Defendant is NDM. These errors demonstrate the Complaint's wholesale lack of merit.

## III. CONCLUSION

For the reasons above, Defendant requests that the Court dismiss Plaintiff's Complaint with prejudice, close the case, and put an end to Relator's serially-speculative FCA *qui tam* litigation.

## WORD COUNT CERTIFICATION

The undersigned, Daniel C. Silva, counsel of record for Defendant Nations Direct Mortgage, LLC, certifies that this brief contains 3,715 words, which complies with the word limit of L.R. 11-6.1.

DATED: November 26, 2025

Respectfully submitted,

BUCHALTER
A Professional Corporation

By: s/ *Daniel C. Silva*
Daniel C. Silva
Kalley R. Aman
David S. Wilson
*Attorneys for Defendant*
*Nations Direct Mortgage, LLC*

BUCHALTER 106372527v2